FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 23, 2018

SEAN F. McAVOY, CLERK

1

2

3

4

5 **UNITED STATES DISTRICT COURT**

6 **EASTERN DISTRICT OF WASHINGTON**

7 | CODY MICHAEL COOK,

8 |            Plaintiff,

9 |   vs.

10 | COMMISSIONER OF SOCIAL
SECURITY,

11 |            Defendant.

No. 2:16-cv-00414-MKD

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 20, 21

12

13      BEFORE THE COURT are the parties' cross-motions for summary

14 judgment. ECF Nos. 20, 21. The parties consented to proceed before a magistrate

15 judge. ECF No. 3. The Court, having reviewed the administrative record and the

16 parties' briefing, is fully informed. For the reasons discussed below, the Court

17 denies Plaintiff's motion (ECF No. 20) and grants Defendant's motion (ECF No.

18 21).

19

20

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ORDER - 2

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

ORDER - 3

gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

ORDER - 5

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### ALJ'S FINDINGS

Plaintiff filed an application for Title XVI supplemental security income benefits on July 28, 2010, alleging an amended onset date of July 28, 2010. Tr. 276-80. The application was denied initially, Tr. 165-68, and on reconsideration, Tr. 172-79. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on April 11, 2013. Tr. 52-109. On April 26, 2013, the ALJ denied Plaintiff's claim. Tr. 142-54. On June 4, 2014, the Appeals Council remanded the matter to the ALJ. Tr. 158-62. Plaintiff appeared at a second hearing before an ALJ on March 2, 2015. Tr. 696-732. The ALJ conducted a supplemental hearing on July 14, 2015. Tr. 110-21. On September 9, 2015, the ALJ denied Plaintiff's claim. Tr. 17-36.

At step one of the sequential evaluation process, the ALJ found Plaintiff had engaged in substantial gainful activity since July 28, 2010, but that there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. Tr. 20-21. At step two, the ALJ found Plaintiff has the following severe impairments: major depressive disorder; anxiety disorder; personality disorder with borderline traits; and methamphetamines, benzodiazepines, and

marijuana substance use disorder. Tr. 21. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 22. The ALJ then concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels, but with the following non-exertional mental limitations:

> The claimant is able to understand, remember, and carry out simple routine work instructions and work tasks; no interaction with the general public; can work around co-workers, but without close cooperation in performing job tasks; and can handle occasional supervision but no over-the-shoulder type of supervision. In addition, the claimant has mental symptomatology and takes prescription medication for this symptomatology: however, despite any side effects of the medicine, the claimant would be able to remain reasonably attentive and responsive in a work setting and would be able to carry out normal work assignments satisfactory [sic].

Tr. 24.

At step four, the ALJ found Plaintiff is able to perform past relevant work as a farm machine operator. Tr. 34. Alternatively, at step five, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as laundry worker II, production helper, small parts assembler, sorter, and printed circuit board assembly. Tr. 35. On November 29, 2016, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence; and

2.  Whether the ALJ properly evaluated Plaintiff's symptom complaints. ECF No. 20 at 5-21.

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff challenges the ALJ's consideration of the medical opinions of Dr. Burdge, Dr. Cools, Dr. Colby, Dr. Duris, Dr. MacLennan, Dr. Veraldi, Dr. Fitterer, Dr. Beaty, Ms. Hevly, and Mr. Aronsohn. ECF No. 20 at 5-20.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a

reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-831 (9th Cir. 1995)).

*1. Aaron Burdge, Ph.D. – 2011 Opinion*

Dr. Burdge examined Plaintiff on November 10, 2011, and opined Plaintiff had difficulty concentrating; that his irritability would lead to conflicts with others; that his symptoms could be significantly improved with proper use of psychotropic medications; that he needed a high degree of supervision to address his difficulty

focusing; that employment tended to subject him to an overly stressful environment which may exacerbate his symptoms; that he may be able to function in an entry-level work position but would require special accommodations for his mood and behavior-related symptoms; that at the time of evaluation Plaintiff was unlikely to function adequately in a work setting; and that Plaintiff would be more likely to maintain long-term employment with job skills coaching. Tr. 413-16. The ALJ gave great weight to Dr. Burdge's opinions that Plaintiff's symptoms would improve with psychiatric medications and that overly stressful environments may exacerbate Plaintiff's symptoms, but gave Dr. Burdge's remaining opinions little weight. Tr. 30. Because Dr. Burdge's opinions were contradicted by Dr. Veraldi, Tr. 650-66, 702-12, and Dr. Cools, Tr. 56-78, the ALJ was required to provide specific and legitimate reasons for rejecting the opinions. *Bayliss*, 427 F.3d at 1216; *see also Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 (9th Cir. 2006). Here, Plaintiff challenges the ALJ's treatment of Dr. Burdge's credited opinions, as well as the ALJ's rejection of the remainder of Dr. Burdge's opinions. ECF No. 5-9.

### a. Credited Medical Opinions

The ALJ assigned great weight to Dr. Burdge's opinions that Plaintiff's symptoms would improve with psychiatric medications and that overly stressful environments may exacerbate Plaintiff's symptoms. Tr. 30. Plaintiff challenges

ORDER - 10

the ALJ's reliance on these opinions to support a finding of nondisability. ECF No. 20 at 7-8. Dr. Burdge opined Plaintiff's symptoms "can be somewhat effectively managed through medication" and "there is question as to whether medication can make his symptoms completely manageable." Tr. 414. Plaintiff argues Dr. Burdge's opinions indicate Plaintiff faces only minor prospective improvements in his symptoms and therefore this evidence supports a finding of disability. ECF No. 20 at 7-8. In support of this perspective on the evidence, Plaintiff notes Dr. Burdge opined Plaintiff was unlikely to function in a work setting until his symptoms were managed more effectively. ECF No. 20 at 6-8 (citing Tr. 447).

A rational interpretation of Dr. Burdge's opinions, as adopted by the ALJ, is that Plaintiff's symptoms improve with treatment and therefore do not support a finding of disability. Tr. 30. The ALJ's interpretation is supported by other evidence in the record. For example, Dr. Burdge indicated in the same report that Plaintiff's irritability and lack of impulse control "could be *significantly* improved with use of proper psychotropic medications." Tr. 414 (emphasis added). Additionally, Dr. Cools testified that Plaintiff's anxiety and depression are controllable with medication, to the point Dr. Cools did not believe they constituted severe impairments, and that Plaintiff's behavior was voluntary. Tr. 74-75. Even if evidence could be interpreted more favorably to Plaintiff, if it is

susceptible to more than one rational interpretation, and therefore the ALJ's ultimate conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Because the ALJ's interpretation of the evidence is rational, the Court must uphold the ALJ's finding.

Furthermore, the RFC adequately addresses Dr. Burdge's credited opinions. The RFC limits Plaintiff to no interaction with the public, no close cooperation with coworkers in performing job tasks, occasional supervision. Tr. 24. These limitations address Dr. Burdge's opinion that overly stressful environments may exacerbate Plaintiff's symptoms. Tr. 446. Additionally, the RFC notes Plaintiff takes medication to address his mental impairments, and finds Plaintiff would be able to carry out normal work assignments satisfactorily despite medication side effects. Tr. 24. This component of the RFC addresses the Dr. Burdge's opinion that Plaintiff's symptoms would improve with medication. Tr. 446. The ALJ's findings are supported by substantial evidence.

*b. Discounted Medical Opinions*

Next, the ALJ rejected Dr. Burdge's opinions that Plaintiff had difficulty concentrating; that his irritability would lead to conflicts with others; that he needed a high degree of supervision to address his difficulty focusing; that he may be able to function in an entry-level work position but would require special accommodations for his mood and behavior-related symptoms; that at the time of

evaluation Plaintiff was unlikely to function adequately in a work setting; and that Plaintiff would be more likely to maintain long-term employment with job skills coaching. Tr. 413-16. The ALJ rejected the opinions for several reasons; Plaintiff challenges only one.[1]

First, the ALJ found these opinions were not supported by the record as a whole. Tr. 30. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195

_____

[1] Plaintiff challenged the ALJ's finding that Dr. Burdge's opinion was based heavily on Plaintiff's self-reports, and failed to challenge the ALJ's findings about consistency with the longitudinal record, a lack of internal support for Dr. Burdge's findings, and inconsistencies with Plaintiff's activities of daily living. ECF No. 20 at 5-9. Thus, any challenge to those findings is waived. *See Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity). However, the Court conducted an independent review of the ALJ's decision and finds the ALJ's opinion is supported by substantial evidence in the record.

ORDER - 13

(9th Cir. 2004). Moreover, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. § 416.927(c)(6). Here, the ALJ credited the opinions of Dr. Veraldi and Dr. Cools, who both reviewed the record as a whole and gave medical opinions contrary to Dr. Burdge's opinions. Tr. 28-30.

Although unchallenged, the Court finds on independent review that the ALJ's given reasons are supported by substantial evidence. For example, Dr. Cools testified that Plaintiff's anxiety and depression are controllable with medication, to the point Dr. Cools did not believe they constituted severe impairments, and that Plaintiff's behavior was voluntary. Tr. 74-75. Dr. Veraldi testified that she could not separate the effects of Plaintiff's substance abuse from his mental impairments. Tr. 660. Not only was Dr. Veraldi's opinion contrary to Dr. Burdge's findings, but Plaintiff also failed to disclose his substance abuse to Dr. Burdge. Tr. 414. The ALJ did not err in discrediting Dr. Burdge's 2011 opinions for not being supported by the longitudinal record.

Second, the ALJ found Dr. Burdge did not adequately explain the basis for certain findings and that Dr. Burdge's findings were internally inconsistent. Tr. 30. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided

in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).

The ALJ noted that Dr. Burdge based his opinions on examination results that indicated Plaintiff did not give full effort in participating in the examination. Tr. 30. During the mental status examination, Dr. Burdge observed Plaintiff could repeat only two digits in reverse. Tr. 416. However, Dr. Burdge diagnosed no cognitive impairment. Tr. 413-15. The ALJ reasonably concluded that this result in Plaintiff's mental status examination should have indicated a serious cognitive impairment, and absent such a finding, indicated Plaintiff gave "less-than-full effort" during the examination. Tr. 30. That Dr. Burdge's findings were unexplained and inconsistent with his own observations were specific and legitimate, and unchallenged, reasons to reject them.

Third, the ALJ discounted Dr. Burdge's opinions as being inconsistent with Plaintiff's reported daily activities. Tr. 30. An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *Morgan v. Comm'r of Soc. Sec Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). The ALJ noted that despite Plaintiff's self-reported severe impairments, Plaintiff also reported to Dr. Burdge

that he cared for his infant son and was able to perform household chores. Tr. 30, 414. This was a specific and legitimate, and unchallenged, reason to discredit Dr. Burdge's findings.

Finally, the ALJ discredited Dr. Burdge's remaining opinions because they were based on Plaintiff's subjective self-reports. Tr. 30. A physician's opinion may be rejected if it based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan*, 169 F.3d at 602; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, [this] is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

As discussed *infra*, the ALJ gave several legally sufficient reasons for rejecting Plaintiff's symptom testimony. Plaintiff argues that because Dr. Burdge performed an objective mental status examination, the ALJ unreasonably concluded that Dr. Burdge "relied heavily" on Plaintiff's self-reports. ECF No. 20 at 8. However, in light of the ALJ's observations about Plaintiff's daily activities being inconsistent with Plaintiff's reported limitations and the mixed results of the mental status examination, the ALJ reasonably concluded that the level of impairment Dr. Burdge opined was not proportional to his findings and was therefore heavily based on Plaintiff's self-reports. Tr. 30. Because the ALJ

provided legally sufficient reasons to discredit Plaintiff's symptom complaints, Dr. Burdge's reliance on Plaintiff's subjective symptom complaints was a specific and legitimate reason to discredit Dr. Burdge's opinions. The ALJ's conclusion is supported by substantial evidence.

2. *Aaron Burdge, Ph. D. – 2013 Opinion*

Dr. Burdge examined Plaintiff again on September 12, 2013, and opined Plaintiff had moderate limitations in his ability to perform activities within a schedule, learn new tasks, adapt to changes in a routine work setting, ask simple questions or request assistance, and communicate and perform effectively in a work setting; and that Plaintiff had severe restrictions in his ability to complete a normal work day and work week without interruptions from psychologically based symptoms, maintain appropriate behavior in a work setting, and set realistic goals and plan independently. Tr. 488-92. The ALJ gave significant weight to Dr. Burdge's opinions that Plaintiff has mild limitation in his ability to understand, remember, and persist in tasks by following very short and simple instructions, and mild limitation in his ability to be aware of normal hazards and take appropriate precautions, but gave little weight to the remainder of Dr. Burdge's opinions. Tr. 31. Because Dr. Burdge's opinions were contradicted by Dr. Veraldi, Tr. 650-66, 702-12, and Dr. Cools, Tr. 56-78, the ALJ was required to provide specific and

legitimate reasons for rejecting the opinions. *Bayliss*, 427 F.3d at 1216; *see also Widmark*, 454 F.3d at 1066-67.

First, the ALJ found Dr. Burdge's opinions were inconsistent with the record as a whole. Tr. 31. ECF No. 20 at 10-11. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Plaintiff faults the ALJ for failing to identify what information in the record supports this finding.[2] "The ALJ must do more than state conclusion. He must set forth his own interpretations and explain why they, rather than the doctors' are correct." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Prior to discussing Dr. Burdge's opinions, the ALJ considered and evaluated the opinions of Dr. Veraldi, Dr. Cools, Dr. Fitterer, and Dr. Beaty. Tr. 28-29. The ALJ credited specific portions of each doctor's opinion that contradicted Dr. Burdge's findings. Reading the ALJ's discussion of Dr. Burdge's 2013 opinion in context with the rest of the ALJ's opinion, the ALJ sufficiently identified other information in the record that supports the ALJ's conclusion. Inconsistency with

_____

[2] Defendant fails to address this issue in its brief. ECF No. 21 at 8-9.

ORDER - 18

the record was a specific and legitimate reason for the ALJ to discredit Dr. Burdge's 2013 opinion.

Second, the ALJ found Dr. Burdge was not familiar with the record. Tr. 31. The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. § 416.927(c)(6). As discussed *supra*, the ALJ credited the opinions of Dr. Veraldi and Dr. Cools, who both reviewed the record as a whole and gave medical opinions contrary to Dr. Burdge's opinions, which were not based on a review of the record. Tr. 28-30. Thus, it was proper to discredit Dr. Burdge's opinion in favor of medical sources who were more familiar with the record.[3]

Third, the ALJ found Plaintiff's symptom reporting was inconsistent and his examination behaviors may have been exaggerated. Tr. 31. Evidence that a claimant exaggerated his symptoms is a clear and convincing reason to reject the doctor's conclusions. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). To

_____

[3] Plaintiff responds to the ALJ's finding by identifying objective examination results Dr. Burdge relied on in forming his opinion. ECF No. 20 at 11. However, this information does not address Dr. Burdge's lack of familiarity with the entire medical record.

ORDER - 19

the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *See Morgan*, 169 F.3d at 599-600; *see also Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Dr. Burdge noted "[b]ehavioral observations [of Plaintiff] were inconsistent with a severe mental illness." Tr. 489. Plaintiff counters that Dr. Burdge observed Plaintiff to put forth adequate effort during this examination. ECF No. 20 at 11 (citing Tr. 492). This observation is not inconsistent with a finding that Plaintiff may have exaggerated his symptoms. However, to the extent this issue is ambiguous, the ALJ's role was to resolve the ambiguity, and the ALJ reasonably concluded that Dr. Burdge's own admission of inconsistency made Dr. Burdge's opinion less credible. This was a specific and legitimate reason to discredit Dr. Burdge's opinion.

Finally, the ALJ gave Dr. Burdge's opinion less weight because Plaintiff was not forthcoming about his substance abuse during Dr. Burdge's examination. Tr. 31. An ALJ may properly reject a medical opinion that is rendered without knowledge of a claimant's substance abuse. *See Coffman v. Astrue*, 469 Fed. App'x 609, 611 (9th Cir. 2012); *Serpa v. Colvin*, No. 11-cv-121-RHW, 2013 WL 4480016, *8 (E.D. Wa., Aug. 19, 2013). The record indicates Plaintiff was using marijuana at the time of Dr. Burdge's 2013 examination. Tr. 569. While Plaintiff disclosed past substance abuse to Dr. Burdge during the 2013 examination, he

ORDER - 20

failed to report active marijuana use. Tr. 489. Furthermore, Plaintiff fails to challenge this finding with specificity, thus the argument is waived. *See Carmickle*, 533 F.3d at 1161 n.2. However, the Court finds upon independent review that the ALJ's conclusion is supported by substantial evidence. The ALJ did not err in discrediting Dr. Burdge's 2013 opinion.

### 3. Faulder Colby, Ph.D.

Dr. Colby reviewed the record on December 6, 2011, and opined the record provided enough evidence to support a finding of psychotic disorder but not at the level to qualify for DSHS benefits; that the record did not support a finding of schizoaffective disorder; that substance abuse did not contribute significantly to Plaintiff's functional impairments; and that Plaintiff's symptoms were expected to last for 24 months. Tr. 412. The ALJ gave great weight to Dr. Colby's opinions about psychotic disorder and schizoaffective disorder, but gave Dr. Colby's remaining opinions little weight. Tr. 31. Because Dr. Colby's opinions were contradicted by Dr. Veraldi, Tr. 650-66, 702-12, and Dr. Cools, Tr. 56-78, the ALJ was required to provide specific and legitimate reasons for rejecting the opinions. *Bayliss*, 427 F.3d at 1216.

The ALJ rejected Dr. Colby's opinions, in part, because they were based on Dr. Burdge's 2011 opinion, which the ALJ properly rejected for being based on Plaintiff's subjective symptom reports. Tr. 31. An ALJ may reject an opinion that

is based heavily on another physician's properly discredited opinion. *Paulson v. Astrue*, 368 Fed. App'x 758, 760 (9th Cir. 2010) (unpublished). Because the Court found *supra* that the ALJ provided legally sufficient reasons to discredit Dr. Burdge's 2011 opinion, this was a proper reason to discredit Dr. Colby's opinion.[4]

Next, the ALJ found Dr. Colby's discredited opinions were inconsistent with the record and did not account for Plaintiff's substance abuse. Tr. 31. Specifically, the ALJ gave Dr. Colby's opinions less weight because Plaintiff was not forthcoming about his drug use at the evaluation with Dr. Burdge, on which Dr. Colby relied. Tr. 31. The record supports the ALJ's finding. *See Coffman*, 469 Fed. App'x at 611; *Serpa*, 2013 WL 4480016 at *8. The ALJ noted that both Plaintiff and his grandmother denied any substance abuse history during the 2011 examination. Tr. 31; *see also* Tr. 414. As noted *infra*, there is substantial evidence documenting Plaintiff's substance abuse issues. The ALJ reasonably relied on Plaintiff's lack of candor regarding his substance abuse in giving Dr. Colby's

_____

[4] Plaintiff failed to challenge the ALJ's additional reasons for discrediting Dr. Colby's opinion, ECF No. 20 at 9, thus, Plaintiff has waived argument on these reasons. *See Carmickle*, 533 F.3d at 1161 n.2. However, the Court conducted an independent review of the ALJ's decision and finds the ALJ's opinion is supported by substantial evidence in the record.

opinion less weight, which was another specific and legitimate reason to reject the assessed mental limitations.

### 4. Mark Duris, Ph.D.

Dr. Duris examined Plaintiff on October 21, 2009, and May 3, 2011, and opined Plaintiff had mild limitations in his ability to understand, remember, and persist in tasks by following simple instructions and learn new tasks; had moderate limitations in his ability to perform tasks following complex instructions, be aware of normal hazards, and take appropriate precautions; and had marked limitations in his ability to perform routine tasks without undue supervision, communicate and perform effectively in a work setting with public contact or limited public contact, and maintain appropriate behavior in a work setting. Tr. 419-35. The ALJ gave these opinions little weight.[5] Tr. 34. Because Dr. Duris was contradicted by Dr. Veraldi, Tr. 650-66, 702-12, and Dr. Cools, Tr. 56-78, the ALJ was required to

_____

[5] Plaintiff argues the ALJ improperly failed to discuss Dr. Duris' 2009 findings. ECF No. 20 at 13. However, the ALJ considered the 2009 and 2011 examinations together and collectively provided reasons for rejecting Dr. Duris' opinions. Tr. 33-34. Additionally, the Court notes the 2009 examination precedes the alleged onset date and is thus of limited relevance to the ALJ's disability determination. *Carmickle*, 533 F.3d at 1165.

ORDER - 23

provide specific and legitimate reasons for rejecting the opinions. *Bayliss*, 427 F.3d at 1216; *see also Widmark*, 454 F.3d at 1066-67.

First, the ALJ found Dr. Duris' opinions were inconsistent with his own examination findings. Tr. 33-34. A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957. Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett*, 340 F.3d at 875 (affirming ALJ's rejection of physician's opinion as unsupported by physician's treatment notes). Here, the ALJ noted Dr. Duris opined in 2011 that Plaintiff had several moderate and marked functional limitations. Tr. 33-34. However, Dr. Duris' objective mental status examination showed generally normal results, including a cooperative attitude, appropriate dress, adequate grooming, appropriate eye contact, situational orientation, serial subtraction within normal limits, spelling forward and backward within normal limits, and speech within normal limits. Tr. 435. While Dr. Duris did observe some results not within normal limits, Dr. Duris prefaced his report by noting Plaintiff "engaged in *significant* over reporting of symptoms." Tr. 429 (emphasis in original). Dr. Duris also noted Plaintiff's personality assessment inventory (PAI) results were invalid. *Id.* Plaintiff argues the ALJ improperly considered why the PAI results were invalid. ECF No. 20 at 13-14. Notwithstanding why they were invalid, Dr. Duris

ORDER - 24

relied on test results he deemed invalid or questionable. Tr. 429, 435. This lack of support from Dr. Duris' own examination of Plaintiff were a specific and legitimate reason to discredit Dr. Duris' opinions.

Second, the ALJ found Dr. Duris' opinions were based heavily on Plaintiff's self-reports. Tr. 34. A physician's opinion may be rejected if it based on a claimant's subjective complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604. As discussed *infra*, the ALJ gave several legally sufficient reasons for rejected Plaintiff's symptom testimony. Moreover, Dr. Duris' own test results indicated Plaintiff was over-reporting his symptoms. Tr. 429. This was a specific and legitimate reason to discredit Dr. Duris' opinions.

Additionally, the ALJ found Dr. Duris' opinions were not consistent with the record as a whole, that Dr. Duris' opinions were based on exaggerated examination results, that Dr. Duris was unfamiliar with the case record, and that Dr. Duris inconsistently noted Plaintiff both did and did not have a diagnosis of substance abuse or dependence. Tr. 33-34. Plaintiff failed to challenge these reasons in his opening brief, and thus waived argument on these findings. *See Carmickle*, 533 F.3d at 1161 n.2. The Court finds on independent review that the ALJ's given reasons are supported by substantial evidence. The ALJ did not err in discrediting Dr. Duris' opinions.

*5. Catherine MacLennan, Ph.D.*

Dr. MacLennan examined Plaintiff on December 6, 2010, and opined Plaintiff was not able to reason well or organize his thinking; had poor judgment based on history; had poor insight into his own condition; had difficulty following and participating in conversation; was able to understand what is said to him if he is attending; was able to sustain concentration, pace, and persistence for a brief time; was able to sustain focused attention long enough to ensure the timely completion of tasks; had difficulty getting along with others; would have difficulty getting along with others in a work setting; did not cope well with stress; was unlikely to respond appropriately to changes in the workplace; and was not adaptive. Tr. 343-47. The ALJ credited Dr. MacLennan's findings of limitations in social functioning, and included in the RFC limitations to no interaction with the general public and limited interactions with coworkers and supervisors. Tr. 24, 30. However, the ALJ gave little weight to Dr. MacLennan's remaining opinions. Because Dr. MacLennan was contradicted by Dr. Veraldi, Tr. 650-66, 702-12, and Dr. Cools, Tr. 56-78, the ALJ was required to provide specific and legitimate reasons for rejecting the opinions. *Bayliss*, 427 F.3d at 1216; *see also Widmark*, 454 F.3d at 1066-67.

First, the ALJ found Dr. MacLennan's opinions were inconsistent with the record as a whole, including Dr. MacLennan's observation that Plaintiff

presentation during her examination was "'much more' disorganized and agitated than his presentation for another examiner on several occasions." Tr. 30. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.

Here, the ALJ noted Dr. MacLennan observed Plaintiff to be significantly more disorganized and agitated than he appeared in the medical records she observed. Tr. 30; c*ompare* Tr. 346 (Plaintiff appears quite disorganized and agitated) *with* Tr. 333-36 (Plaintiff appears calm and cooperative with bright mood). To counter this finding, Plaintiff identifies later examinations where Plaintiff was observed to be angry or agitated. ECF No. 20 at 15-16. However, Dr. MacLennan's own observation of inconsistency was limited to the medical records she reviewed. Tr. 343. Plaintiff's evidence does not undermine Dr. MacLennan's observation as it relates to the evidence she reviewed. Because Dr. MacLennan indicated that she based her opinion on Plaintiff's presentation during the examination, Tr. 346, and because Dr. MacLennan also observed that Plaintiff's presentation during the examination was inconsistent with the medical evidence she reviewed, *id.*, the ALJ reasonably concluded that Dr. MacLennan's opinions were not supported by evidence in the record.

The ALJ also noted other components of Dr. MacLennan's report that were not supported by the record. For example, Plaintiff reported to Dr. MacLennan that he experienced hallucinations. Tr. 345. Yet Plaintiff regularly denied hallucinations during other medical examinations. *See* Tr. 333 (August 9, 2010); Tr. 404 (June 22, 2011); Tr. 402 (August 22, 2011); Tr. 490 (September 12, 2013); Tr. 576 (November 12, 2013); Tr. 507 (April 11, 2014); Tr. 510 (April 17, 2014); Tr. 538 (October 13, 2014); Tr. 678 (February 23, 2015). This lack of longitudinal support is a specific and legitimate reason to discredit Dr. MacLennan's findings.

Second, the ALJ found Dr. MacLennan's opinions relied heavily on Plaintiff's subjective symptom reports. Tr. 30. A physician's opinion may be rejected if it based on a claimant's subjective complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604. As discussed *infra*, the ALJ gave several legally sufficient reasons for rejecting Plaintiff's symptom testimony. Dr. MacLennan's reliance on Plaintiff's subjective symptom complaints was a specific and legitimate reason to discredit her opinions.

Finally, the ALJ noted Dr. MacLennan's opinions were based on Plaintiff's inconsistently-reported history of drug use. Tr. 30. *See Coffman*, 469 Fed. App'x at 611 (affirming ALJ's rejection of examining psychologist's opinion, in part, due to the fact that "plaintiff periodically concealed" his substance abuse from

providers); *Serpa*, 2013 WL 4480016 at *8 (affirming ALJ's rejection of a physician's opinion because it was made without knowledge of the claimant's substance abuse and narcotic-seeking behavior). Plaintiff reported "previous, but not current drug use" to Dr. MacLennan. Tr. 346. But other reports in the record indicate Plaintiff was using marijuana during this time. *See* Tr. 569 (2013 report Plaintiff has used marijuana since high school).[6] Plaintiff also reported to Dr. MacLennan that he first tried methamphetamines in 2006 and was not currently using methamphetamines. Tr. 343, 346. However, at a September 2010 medical appointment, Plaintiff reported having recently tried methamphetamines for the first time. Tr. 337. That Dr. MacLennan based her report on Plaintiff's inconsistently reported history of drug use was a specific and legitimate reason to discredit her opinions. The ALJ did not err in discrediting Dr. MacLennan's opinions.

---

[6] Plaintiff accurately notes that the ALJ cited a report that Plaintiff used marijuana during, rather than after, high school. ECF No. 20 at 16. However, other reports in the record support the ALJ's finding, so any error in this inaccurate citation is harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

*6.  Donna Veraldi, Ph.D.*

Dr. Veraldi reviewed the record on February 16, 2015, Tr. 650-66, and testified at the hearing on March 2, 2015, Tr. 702-12.  Dr. Veraldi opined that Plaintiff's diagnoses of schizoaffective disorder, bipolar disorder, and attention deficit disorder were not substantiated by objective findings in the record; Plaintiff had mild functional limitations in his activities of daily living; Plaintiff had mild functional limitations in maintaining concentration, persistence, or pace; Plaintiff had moderate to marked limitations in maintaining social functioning; Plaintiff had experienced no episodes of decomposition; and that Dr. Veraldi was unable to separate the effects of Plaintiff's marijuana use from Plaintiff's mental health symptoms.  Tr. 650-62.  Regarding Plaintiff's moderate to marked limitations in social functioning, Dr. Veraldi elaborated Plaintiff "can get angry, rude, use obscene language, he has problems relating."  Tr. 705.  The ALJ gave Dr. Veraldi's opinions great weight.  Tr. 28.  Plaintiff asserts the ALJ failed to adequately incorporate Dr. Veraldi's opinion about moderate to marked limitations in social functioning into the RFC.  ECF No. 20 at 16-17.

"[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  "[A]n ALJ may interpret assessed limitations into an RFC assessment without repeating each functional limitation verbatim in the RFC

assessment provided that the limitations contained in the RFC assessment accurately capture the claimant's level of functioning supported by the evidence." *Upton v. Colvin*, 2016 WL 1060194 at *3 (E.D. Cal. March 17, 2016) (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008)). Where evidence in the record is subject to more than one rational interpretation, the Court defers to the ALJ's conclusion. *Batson*, 359 F.3d at 1198.

Here, Dr. Veraldi opined Plaintiff has moderate to marked limitations in social functioning. Tr. 660, 705. The ALJ incorporated this limitation into the RFC by limiting Plaintiff to no interaction with the general public; work around co-workers without close cooperation in performing job tasks; and occasional supervision but no over-the-shoulder type of supervision. Tr. 24. Plaintiff argues the ALJ was required to incorporate Dr. Veraldi's comments about Plaintiff's anger and obscene language into the RFC, and that had the ALJ done so, the vocational expert's testimony should have compelled the ALJ to find Plaintiff disabled.[7] ECF No. 20 at 16-17. However, the ALJ was not required to incorporate Dr. Veraldi's exact commentary into the RFC. *See Stubbs-Danielson*, 539 F.3d at 1173-74. In limiting Plaintiff to certain kinds of interactions with

_____

[7] The vocational expert testified that an individual who uses obscene language and gets into fights on the job would not be tolerated by employers. Tr. 119.

ORDER - 31

others in a work setting, the ALJ reasonably interpreted Dr. Veraldi's medical opinion and translated it into a succinct RFC. *Rounds*, 807 F.3d at 1006. This interpretation of the evidence is further bolstered by Dr. Cools' opinion that Plaintiff is able to conform his behavior when it benefits him. Tr. 28-29, 70-71. Even if Plaintiff offers a different interpretation of the medical opinion evidence, the ALJ's interpretation is reasonable and thus should be upheld. *Batson*, 359 F.3d at 1198. The ALJ did not err in interpreting Dr. Veraldi's opinion.

Plaintiff generally faults the ALJ for discrediting the opinions of Plaintiff's examining physicians discussed *supra* in favor of opinions rendered by reviewing physicians Dr. Cools, Dr. Fitterer, and Dr. Beaty. ECF No. 20 at 5-18. An ALJ must provide specific and legitimate reasons to reject contradicted medical opinion evidence, but the same standard does not apply when the ALJ credits opinion evidence. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *Bayliss*, 427 F.3d at 1216. As discussed *supra*, the ALJ provided specific and legitimate reasons for discrediting Plaintiff's examining physicians. *Garrison*, 759 F.3d at 1012. Plaintiff is not entitled to remand on these grounds.

*7. Kathy Hevly, PMHNP*

Ms. Hevly treated Plaintiff through January 2012, Tr. 400, and opined on August 27, 2010, that Plaintiff had moderate impairments in his ability to understand, remember, and follow complex instructions, learn new tasks, interact

appropriately in public contacts, respond appropriately to and tolerate the pressures and expectations of a normal work setting, care for personal hygiene and appearance, and maintain appropriate behavior in a work setting; marked impairments in his ability to exercise judgment and make decisions and relate appropriately to coworkers and supervisors; is not limited in his ability to perform routine tasks or understand, remember, and follow simple one- to two-step instructions; had a good prognosis if he is able to abstain from substances and be compliant with psychiatric medications; his barriers to employment would be minimized or eliminated with vocational training or services; when he complied with medication, he showed improved mood, less agitation, improved ability to show restraint and regard for others; and that Plaintiff was difficult to accurately diagnose because of his history of substance abuse. Tr. 436-44. The ALJ gave great weight to Ms. Hevly's opinions related to substance abuse, no limitations in performing routine tasks or tasks by following simple instructions, and improvement in functioning when compliant with treatment, but gave her remaining opinions little weight. Tr. 33. As a PMHNP, Ms. Hevly is considered an "other source" under the regulations. 20 C.F.R. § 416.913(d) (2013). Thus, the ALJ was required to cite germane reasons for rejecting her opinions. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

ORDER - 33

First, the ALJ found Ms. Hevly's remaining opinions were inconsistent or not supported by the longitudinal record, including the medical record documenting Plaintiff's daily activities. Inconsistency with medical evidence is a germane reason for rejecting lay witness evidence. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-34 (9th Cir. 2010); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Plaintiff challenges this conclusion, but fails to identify with specificity supporting evidence for this position.[8] Furthermore, the record supports the ALJ's finding. For example, Dr. Cools testified that Plaintiff's anxiety and depression are controllable with medication, to the point Dr. Cools did not believe they constituted severe impairments, and that Plaintiff's behavior was voluntary. Tr. 74-75. Additionally, inconsistency with a claimant's daily activities is a germane reason to reject lay testimony. *Carmickle*, 533 F.3d at 1163-64; *Lewis*, 236 F.3d at 512. The ALJ observed that Ms. Hevly's opinion that Plaintiff is moderately impaired in learning new tasks, Tr. 439, was inconsistent with Plaintiff's testimony that he enjoys playing a variety of video games, Tr. 102. Tr.

_____

[8] Plaintiff refers the Court to "virtually every medical opinion" in support of this position. ECF No. 20 at 19. However, as discussed *supra*, the ALJ provided specific and legitimate reasons to discount many of the medical opinions in the record.

ORDER - 34

33.  These inconsistencies were germane reasons to discredit Ms. Hevly's remaining opinions.

The ALJ also discredited Ms. Hevly's remaining opinions for being based on Plaintiff's subjective symptom claims and for not clearly indicating whether Plaintiff's limitations would remain if Plaintiff were compliant with treatment.  Tr. 33.  Plaintiff fails to challenge these reasons, thus, argument on these reasons is waived.  *Kim*, 154 F.3d at 1000; *Carmickle*, 533 F.3d at 1161 n.2.  Regardless, the Court finds the ALJ's rationale is supported by substantial evidence.  The ALJ did not err in rejecting Ms. Hevly's opinions.

*8.  Eric Aronsohn, PA-C*

Mr. Aronsohn treated Plaintiff between April 2013 and January 2015.  Tr. 613-42.  On October 21, 2014, Mr. Aronsohn opined Plaintiff was mildly limited in his ability to carry out very short simple instruction; was moderately to markedly limited in understanding and memory; was markedly limited in sustained concentration and pace; was markedly to severely limited in social interaction and adaption; was likely to be off-task for over thirty percent of a forty hour work week; and was likely to miss four or more days of work per month.  Tr. 449-51. The ALJ gave Mr. Aronson's opinions little weight.  Tr. 32-33.  As a PA-C, Mr. Aronsohn is considered an "other source" under the regulations.  20 C.F.R. §

416.913(d) (2013).  Thus, the ALJ was required to cite germane reasons for rejecting his opinions.  *See Dodrill*, 12 F.3d at 919.

First, the ALJ found Mr. Aronsohn's opinions were inconsistent or not supported by the longitudinal record.  Inconsistency with medical evidence is a germane reason for rejecting lay witness evidence.  *Turner*, 613 F.3d at 1223-34; *Lewis*, 236 F.3d at 511.  Here, the ALJ failed to offer specific examples of evidence in the record that failed to support Mr. Aronsohn's conclusions.  However, the ALJ provided several other germane reasons to discount Mr. Aronsohn's opinion, thus, this error was inconsequential to the overall disability determination.  *See Stout*, 454 F.3d at 1055.  Therefore, any such error is harmless.

Second, the ALJ gave Mr. Aronsohn's opinion less weight because Mr. Aronsohn is not a psychiatric specialist.  Tr. 32.  The specialty of a medical source is a relevant factor in weighing a medical opinion.  20 C.F.R. § 416.927(c)(5) (2012).  Mr. Aronsohn wrote in his own treatment notes, in response to Plaintiff's psychiatric symptom complaints, that he is not a psychiatric provider and practices in family medicine.  Tr. 626, 631.  The ALJ reasonably discounted Mr. Aronsohn's opinions in favor of Dr. Cools and Dr. Veraldi, who are both psychiatric specialists.  Tr. 199, 248-52.  This was a germane reason to discount Mr. Aronsohn's opinions.

Third, the ALJ gave Mr. Aronsohn's opinion less weight because of the incomplete nature of his treatment relationship with Plaintiff. Tr. 32. An ALJ is permitted to consider the length and nature of a treatment relationship in evaluating the opinions of "other sources." SSR 06-03P, *available at* 2006 WL 2329939 at *4 (Aug. 9, 2006), *see also Koenig v. Colvin*, 2014 WL 5781764 at *11 (E.D. Wash. Nov. 6. 2014). The ALJ noted Mr. Aronsohn's opinion was based on a history of four examinations over two years, that Plaintiff's examinations were conducted mostly on a walk-in basis, and that Plaintiff "no showed" for multiple appointments with Mr. Aronsohn. Tr. 32. The ALJ noted Mr. Aronsohn also had an incomplete treatment relationship with Plaintiff because of Plaintiff's failure to disclose information to Mr. Aronsohn. *Id.* Although Mr. Aronsohn prescribed Seroquel for Plaintiff in March 2014, Plaintiff stopped taking the Seroquel in May 2014 and did not inform Mr. Aronsohn of this decision until October 2014. *Id.* The incomplete nature of this treatment relationship was a germane reason for the ALJ to discredit Mr. Aronsohn's opinion. Furthermore, Plaintiff fails to challenge these conclusions, thus, argument is waived. *Kim*, 154 F.3d at 1000; *Carmickle*, 533 F.3d at 1161 n.2.

Finally the ALJ discounted Mr. Aronsohn's opinion because it was not supported by treatment records. An ALJ may consider the degree to which the source provides relevant supporting evidence in evaluating an "other source"

ORDER - 37

opinion. SSR 06-03P, *available at* 2006 WL 2329939 at *4. The ALJ noted that

Dr. Aronsohn qualified his own treatment notes with caveats that he is not a

psychiatric provider, thus undermining his own findings of psychiatric limitations.

Tr. 32. Additionally, the ALJ credited Dr. Veraldi's opinion that Mr. Aronsohn's

treatment notes do not support his diagnoses and opinion. Tr. 32-33 (citing Tr.

711-12). Furthermore, Plaintiff fails to challenge these conclusions, thus,

argument is waived. *Kim*, 154 F.3d at 1000; *Carmickle*, 533 F.3d at 1161 n.2. The

ALJ provided germane reasons to discredit Mr. Aronsohn's opinion.

## B. Plaintiff's Symptom Testimony

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting his symptom claims. ECF No. 20 at 20-21. An ALJ

engages in a two-step analysis to determine whether a claimant's testimony

regarding subjective pain or symptoms is credible. "First, the ALJ must determine

whether there is objective medical evidence of an underlying impairment which

could reasonably be expected to produce the pain or other symptoms alleged."

*Molina,* 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not

required to show that his impairment could reasonably be expected to cause the

severity of the symptom he has alleged; he need only show that it could reasonably

have caused some degree of the symptom." *Vasquez v. Astrue,* 572 F.3d 586,

591(9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (quoting *Lingenfelter*, 504 F.3d at 1036). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester,* 81 F.3d at 834); *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia,* (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas,* 278 F.3d at 958-59.

The ALJ found that Plaintiff's medically determinable impairments could cause Plaintiff's alleged symptoms, but that Plaintiff's testimony about the severity of his symptoms was not entirely credible. Tr. 26.

*1. Lack of Supporting Medical Evidence*

First, the ALJ found Plaintiff's testimony was not supported by the medical evidence. Tr. 26. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *Burch*, 400 F.3d at 680. Plaintiff challenges the ALJ's conclusion; however, as discussed *supra*, the ALJ provided specific and legitimate reasons to discredit many of the medical opinions in the record upon which Plaintiff's argument relies. Even if the ALJ erred in failing to identify specific pieces of evidence in the record that failed to corroborate Plaintiff's alleged level of impairment, such error is inconsequential to the overall disability determination because the ALJ offered several other clear and convincing reasons to discredit Plaintiff's testimony. *See Stout*, 454 F.3d at 1055. Therefore, any such error is harmless.

*2. Improvement with Treatment*

Second, the ALJ found Plaintiff's symptoms improved with treatment. Tr. 26. The effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3) (2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir.

2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

The ALJ noted that Plaintiff regularly showed signs of improvement when he was compliant with his prescribed medications. Tr. 26; *see, e.g.*, Tr. 439 (Plaintiff showed less agitation, improved mood, and improved ability to show restraint and regard for others when taking Depakote); Tr. 484 (Plaintiff "becomes more functional" when compliant with medication); Tr. 337 (Plaintiff reports being at his best when taking Xanax); Tr. 640 (Plaintiff "has been[] doing much better on atypical meds"). Plaintiff challenges this finding by noting Plaintiff claimed he was hearing voices and was observed to be easily agitated after taking lithium for several months. EF No. 20 at 22. Even if Plaintiff can identify evidence that can be interpreted more favorably to Plaintiff's position, the evidence is susceptible to more than one rational interpretation, and therefore the ALJ's ultimate conclusion must be upheld. *See Burch*, 400 F.3d at 679. That Plaintiff's symptoms improved

with treatment was a clear and convincing reason to discredit Plaintiff's symptom testimony.

### 3. Failure to Follow Treatment Recommendations

Third, the ALJ discredited Plaintiff's symptom testimony because of Plaintiff's significant history of failing to follow through with treatment recommendations. Tr. 26-27. It is well-established that unexplained or inadequately explained non-compliance with treatment reflects on a claimant's credibility. *See Molina*, 674 F.3d at 1113-14; *Tommasetti*, 533 F.3d at 1039; *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (an ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment when assessing a claimant's credibility).

The ALJ noted Plaintiff failed to appear for fifteen of thirty-one counseling treatment appointments and thirteen of twenty-four anger management sessions. Tr. 26; *see* Tr. 453-560, 668-95. The ALJ also noted Plaintiff repeatedly took himself off his prescribed medications. Tr. 26; *see* Tr. 400 (Plaintiff "has a significant past for lack of engagement and non compliance [sic]"); Tr. 404 (Plaintiff has "been off the medication for several weeks"); Tr. 460 (Plaintiff not compliant with prescribed medication); Tr. 473 (Plaintiff has "failed to maintain any long-term compliance with medication regimen").

Plaintiff counters that the ALJ failed to consider Plaintiff's given reasons for failing to comply with treatment recommendations: that he disliked the side effects of medications, lacked transportation to get to appointments, and was ejected from therapy sessions. ECF No. 20 at 20. However, the ALJ did consider Plaintiff's offered justifications, and accurately noted that the record shows Plaintiff inconsistently gave these excuses for treatment noncompliance at different times. Tr. 26; *see, e.g.,* Tr. 523 (Plaintiff indicated in May 2014 that he could not attend treatment due to work during harvest season and fear of angry outbursts); Tr. 527 (Plaintiff indicated in October 2014 that he was unable to attend treatment due to harvest, incarceration, and transportation issues, but did not mention angry outbursts); Tr. 714 (Plaintiff testified he worked for only one and a half months during the harvest season in 2014). In evaluating the credibility of symptom testimony, the ALJ may utilize ordinary techniques of credibility evaluation, including considering prior inconsistent statements. *Smolen,* 80 F.3d at 1284. The ALJ did not err in this analysis.

*4. Inconsistent Statements*

Fourth, the ALJ found Plaintiff made several inconsistent statements regarding his substance use and his work history. Tr. 26-28. In evaluating the credibility of symptom testimony, the ALJ may utilize ordinary techniques of credibility evaluation, including considering prior inconsistent statements. *Smolen,*

ORDER - 43

80 F.3d at 1284.  Moreover, it is well-settled in the Ninth Circuit that conflicting or inconsistent statements concerning drug use can contribute to an adverse credibility finding.  *Thomas*, 278 F.3d at 959.

Here, the ALJ identified several inconsistencies in Plaintiff's reporting of his drug use.[9]  Plaintiff denied substance abuse in certain medical examinations.  *See* Tr. 423 (denies recent substance abuse on October 21, 2009); Tr. 414 (denies any substance abuse history on November 10, 2010); Tr. 429 (denies any substance abuse history on May 3, 2011).  However, Plaintiff endorsed varying levels of substance abuse in other examinations.  *See* Tr. 337 (tried methamphetamines in 2010); Tr. 343 (tried methamphetamines in 2006; admits to infrequent marijuana use on December 6, 2010; says he used to be a "pot head" and a "meth addict"); Tr. 400 (established care with medical marijuana provider in December 2011); Tr. 569 (admits to marijuana use since high school on November 12, 2013); Tr. 586 (admits to heavy methamphetamine use and alcohol abuse while in high school).

_____

[9] Contrary to Plaintiff's characterization, ECF No. 20 at 21, the ALJ did not discredit Plaintiff because of Plaintiff's drug use.  Furthermore, the ALJ was not required to complete a DAA analysis because the ALJ's analysis ended at step four.  *See Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).

ORDER - 44

These inconsistencies in Plaintiff's reporting are a clear and convincing reason to discredit Plaintiff's testimony.

The ALJ also noted Plaintiff inconsistently reported his work history. Tr. 27-28. Plaintiff reported to medical providers that his harvest work started in May 2014, Tr. 523, and ended in October 2014, Tr. 527. However, Plaintiff testified that the 2014 harvest season lasted only one and a half months. Tr. 714. Although Plaintiff reported no earnings prior to 2011 (when Plaintiff would have been 20-21 years old), Tr. 292-93, Plaintiff reported he worked on-call as a roofer while in high school, Tr. 344. Even if the record is unclear as to whether Plaintiff's other work history before 2011 was compensated, and thus inconsistent with the earnings report, the ALJ identified several inconsistencies that provide clear and convincing reasons to discredit Plaintiff's testimony.

### 5. Ability to Work Despite Impairments

Finally, the ALJ observed Plaintiff was able to work during the alleged period of disability, sometimes at SGA levels. Tr. 26-28. Working with an impairment supports a conclusion that the impairment is not disabling. *See Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992). Plaintiff reported working twelve hours per day driving a combine during the harvest season in 2013 and 2014. Tr. 713-16. Plaintiff also reported driving a combine and working in a corn factory in 2012, Tr. 79-80, and picking apples in 2011, Tr. 722-23. Plaintiff testified at the

2015 administrative hearing that he actively looks for jobs as a daily activity. Tr. 724. Indeed, Plaintiff testified at the 2013 administrative hearing that he never indicated that he could not work, and that his family filed his application for disability benefits. Tr. 78. That Plaintiff was able to perform these jobs, despite his impairments, supports the ALJ's conclusion that Plaintiff's alleged impairments were not as severe as Plaintiff's testimony indicated. This was another clear and convincing reason for the ALJ to discredit Plaintiff's testimony.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 20) is **DENIED.**

2. Defendant's motion for summary judgment (ECF No. 21) is **GRANTED.** The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE** THE FILE.

DATED February 23, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 46